# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Bradley Cornille, <br><br>       Plaintiff, <br><br> v. <br><br> Percey Myers, <br><br> Wexford Health Sources, <br><br> Jamie Karales, <br><br> Pinckneyville Community Hospital , <br><br> Southern Illinois Hospital, and <br><br> John Davidson, <br><br>       Defendants. | Case No. 3:24-cv-01202-SMY |

## SECOND AMENDED COMPLAINT

Plaintiff Bradley J. Cornille Sr., through the undersigned counsel, brings this action under 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA), the Rehabilitation Act (RA), and the laws of Illinois, and alleges as follows:

### JURISDICTION AND VENUE

1.     This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) (federal civil rights claims), 28 U.S.C. § 1367(a) (supplemental jurisdiction over state law claims), and 42 U.S.C. § 12133 (ADA claims).

2.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because the events giving rise to this action occurred in the Southern District of Illinois.

1

## PARTIES

3.      Plaintiff Bradley J. Cornille Sr. is an individual currently incarcerated at Dixon Correctional Center. At all relevant times, Plaintiff was incarcerated at Pinckneyville Correctional Center in Pinckneyville, Illinois.

4.      Defendant Dr. Percy Myers is the Medical Director at Pinckneyville Correctional Center, employed by Wexford Health Sources, Inc., which contracts with the Illinois Department of Corrections (IDOC) to provide medical services to incarcerated individuals. Dr. Myers is sued in his individual capacity.

5.      Defendant Pinckneyville Community Hospital (PCH) is a hospital located in Pinckneyville, Illinois 62274.

6.      Defendant Southern Illinois Hospital (SIH-MH) is a hospital located at 405 W. Jackson Street, Carbondale, Illinois 62901.

7.      John Davidson is a physician's assistant at SIH-MH.

8.      Defendant Jamie Karales is assistant warden of Pinckneyville Correctional Center and for purposes of the Americans with Disabilities Act and the Rehabilitation Act he is sued in his official capacity as Illinois Department of Corrections (IDOC). The IDOC is a state agency responsible for the operation of correctional facilities in Illinois, including Pinckneyville Correctional Center. The IDOC receives federal funding.

## FACTUAL ALLEGATIONS

**September 1, 2023 Fall and Initial Medical Response**

9.      On September 1, 2023, at approximately 7:00 p.m., Plaintiff slipped in vomit that had been left on the floor of his housing unit at Pinckneyville Correctional Center.

10.      Plaintiff's fall was severe: his feet went airborne, and his head, neck, and back forcefully struck the concrete floor. Plaintiff briefly lost consciousness and experienced extreme pain in his head, neck, and back.

11.      Sometime after the fall, Plaintiff was taken to the prison's health care unit (HCU) in a wheelchair.

12.      In the HCU a nurse placed Plaintiff in a cervical collar and called an ambulance.

13.      While waiting, Plaintiff experienced total numbness from the waist down and lost control of his bowels.

**Treatment at Pinckneyville Community Hospital (September 1, 2023)**

14.      Plaintiff was transported to Pinckneyville Community Hospital (PCH) emergency room.

15.      PCH staff were fully briefed on the severity of Plaintiff's fall, including his loss of consciousness, visual disturbances, numbness from the waist down, and loss of bowel control.

3

16. These were symptoms of a spinal cord injury that would require diagnosis of potential soft-tissue spinal injury, such as nerve compression or impingement.

17. Despite these symptoms indicating potential spinal cord injury, PCH medical staff failed to order testing in order to check for such injury.

18. PCH performed only a baseline CT scan of Plaintiff's neck and lower lumbar region.

19. PCH staff prescribed a back brace for Plaintiff, but failed to provide Plaintiff with one.

20. PCH discharged Plaintiff prematurely and without the back brace that PCH's own medical staff had ordered and stated Plaintiff needed.

21. A back brace would have stabilized Plaintiff's back and helped prevent further injury.

**September 2, 2023 Second Fall**

19. Upon his return from PCH to the prison, Plaintiff was unable to walk.

20. He was placed in a cell in the HCU that lacked grab bars or any other devices to assist persons who are paraplegic.

21. On September 2, 2023 a nurse ordered Plaintiff to transfer from the bed to the wheelchair, but left without providing assistance.

22. Plaintiff attempted to perform the move, but without grab bars, an aide, or the stability of a back brace, Plaintiff fell to the floor.

23. Plaintiff experienced extreme shooting pain on his right side.

4

**Treatment at Southern Illinois Hospital (September 2, 2023)**

22.     After his September 2 fall, Plaintiff was transported to Southern Illinois Hospital (SIH-MH) emergency room

23.     Plaintiff symptoms were exacerbated from September 1, again indicating a potential soft-tissue spinal injury, such as nerve compression or impingement.

24.     SIH-MH staff, however, including on information and belief John Davidson, performed a CT without contrast, which is ineffective for detecting soft tissue injuries.

25.     The CT scan confirmed several spinal fractures.

26.     The fractures also indicated the potential for soft tissue injuries, but SIH-MH staff, including on information and belief John Davidson, did not attempt to perform testing that might identify such an injury.

27.     SIH-MH provided Plaintiff with a full upper body brace and instructed that Plaintiff be provided with an appointment with a neurosurgeon within two weeks.

**Dr. Myers's Denial of Care and Retaliation (September 3-15, 2023)**

25.     On information and belief, Dr. Myers or another physician employed by Wexford received the results of the SIH-MH and PCH CT scans and neurosurgeon recommendations but failed to arrange for immediate additional testing and failed to arrange for an immediate neurosurgery appointment.

26.     From September 3 through September 11, 2023, Plaintiff informed multiple nurses of his symptoms, including extreme back pain and numbness below the waist. Every nurse denied these requests, stating they were acting "per Dr. Myers' orders."

27.     On September 11, 2023, physical therapist CPT Jen removed Plaintiff's walker, stating "per Dr. Myers" that Plaintiff was not allowed to walk until his back was "fixed."

28.     On September 13, 2023, Plaintiff was seen by Dr. Myers, who verbally attacked and harassed Plaintiff, referencing prior grievances and Plaintiff's pending federal civil rights lawsuit against Dr. Myers (Case No. 22-cv-1988-MAB).

29.     During this conversation Dr. Myers did not attempt to determine whether Plaintiff was in pain, but he nevertheless discontinued Plaintiff's pain medication (Tramadol), telling Plaintiff, "I will do nothing for you."

30.     On or about September 15, Dr. Myers attempted to discharge Plaintiff from the HCU to general population, where the wheelchair Plaintiff had been provided would be confiscated.  During this attempt to discharge Plaintiff, Dr. Myers said that Plaintiff had only "one very small fracture" with "no displacement."

31.     Plaintiff had not stood or walked in fourteen days at this point.

32.     In the presence of witnesses, including Warden David Mitchell, Plaintiff expressed his concerns and asked Dr. Myers to allow Plaintiff to test the walker while still in the HCU so that medical care would be available if Plaintiff fell.

6

33.    Dr. Myers refused, stating: "I need this cell, I do not care if you fall and get hurt but it will not be done here in front of me, you will do it out in the unit you're going to."

34.    Warden Mitchell intervened and required Dr. Myers to allow Plaintiff to keep his wheelchair and be moved to an ADA-accessible cell.

**MRI Results Prove Dr. Myers Misrepresented Plaintiff's Condition**

35.    On information and belief, sometime before September 22, 2023, Plaintiff's case was sent to a neurosurgeon, who insisted on that an MRI be performed before a surgical consultation.

36.    On September 22, 2023, Plaintiff underwent an MRI at SIH-MH.

37.    The MRI results revealed:

- Vertebral body hemangioma at L2
- Edema enhancement in the right transverse process of L2, L3, and L4
- Minimally displaced fractures at these locations
- Three bulging discs

38.    These results directly contradicted Dr. Myers's statement on September 15, 2023, that Plaintiff had only "one very small fracture" with "no displacement."

39.    The MRI results, in conjunction with the September 2, 2023 CT results, demonstrated that Plaintiff's injuries were far more serious than Dr. Myers had represented.

40. Upon returning from the MRI, Dr. Myers and Health Care Unit Administrator Christine Brown attempted to force Plaintiff into an examination with Dr. Myers by threatening disciplinary action.

41. Plaintiff begged to see another provider. Although two other qualified providers were available and willing to see Plaintiff, Dr. Myers and Brown refused.

**Alternative Provider Confirms Need for Neurosurgery**

41. On September 27, 2023, after Plaintiff declared a hunger strike out of fear for his safety and need for appropriate medical care, he was seen by Physician Assistant A. Desai.

42. PA Desai examined Plaintiff's medical records and stated that Dr. Myers's handwriting and alterations made it difficult to understand the full extent of Plaintiff's injuries.

43. After reviewing the September 2, 2023 CT results and September 22, 2023 MRI results, PA Desai stated: "You should have already been to see a neurosurgeon, most likely post-op. I do not know why Myers has not done an emergency collegial. I will order the neurosurgery collegial now."

44. When spinal cord compression from vertebral hemangiomas is left untreated, it can cause permanent nerve damage and permanent incontinence.

45. Delayed diagnosis and treatment of aggressive vertebral hemangiomas can increase morbidity. Early intervention is crucial for achieving favorable outcomes to minimize permanent damage.

8

46. Plaintiff subsequently received specialized medical attention, but the damage has proven permanent and severe.

47. Plaintiff has been unable to walk since September 1, 2023.

48. Plaintiff is permanently paralyzed and he is incontinent.

49. Plaintiff has suffered paralysis, incontinence, and severe physical and emotional pain as a result of the defendants' foregoing acts and omissions.

## COUNT I:
### Eighth Amendment Deliberate Indifference
### Against Dr. Percy Myers

50. Plaintiff incorporates by reference all preceding paragraphs.

51. Plaintiff had an objectively serious medical need, including spinal fractures at multiple levels, vertebral body hemangioma with edema, nerve compression, paralysis from the waist down, and loss of bowel control.

52. Dr. Myers knew of facts from which he could infer that Plaintiff faced a substantial risk of serious harm, including through his direct examination of Plaintiff, review of CT and MRI results confirming serious spinal injuries, and Plaintiff's reports of severe pain and paralysis.

53. Dr. Myers actually drew the inference that Plaintiff faced a substantial risk of serious harm.

54. Dr. Myers consciously disregarded that risk by failing to arrange for prompt neurosurgical consultation, discontinuing Plaintiff's pain medication, misrepresenting the severity of Plaintiff's injuries, and attempting to discharge Plaintiff from medical housing despite his inability to walk.

9

55.     Dr. Myers's deliberate indifference directly caused Plaintiff's injuries, including a twenty-two day delay in neurosurgical care, permanent paralysis, permanent nerve damage, and chronic severe pain.

56.     Dr. Myers is liable to Plaintiff for compensatory and punitive damages in his individual capacity.

## COUNT II
### First Amendment Retaliation
### Against Dr. Percy Myers

57.     Plaintiff incorporates by reference all preceding paragraphs.

58.     Plaintiff engaged in activity protected by the First Amendment by filing grievances against Dr. Myers and pursuing a federal civil rights lawsuit against him (Case No. 22-cv-1988-MAB).

59.     Dr. Myers took adverse action against Plaintiff by discontinuing his pain medication, refusing to arrange neurosurgical consultation, attempting to discharge Plaintiff from medical housing, and explicitly stating "I will do nothing for you."

60.     There was a causal connection between Plaintiff's protected activity and Dr. Myers's adverse actions, as demonstrated by Dr. Myers's explicit reference to Plaintiff's grievances and lawsuit, the temporal proximity of the retaliation, and Dr. Myers's retaliatory statements.

61.     Dr. Myers's adverse actions, including denial of pain medication and necessary neurosurgical care, would deter a person of ordinary firmness from engaging in protected conduct.

10

62. Dr. Myers is liable to Plaintiff for compensatory and punitive damages in his individual capacity.

## COUNT III
## Medical Negligence
## Against Dr. Percy Myers

41. Plaintiff incorporates by reference all preceding paragraphs.

42. A duty of care existed between Dr. Myers and Plaintiff as Dr. Myers, acting as Medical Director at Pinckneyville Correctional Center, was responsible for Plaintiff's medical care from September 3, 2023, through at least September 27, 2023.

43. Dr. Myers breached the applicable standard of care by failing to arrange for prompt neurosurgical consultation despite CT scan results confirming spinal fractures and instructions from SIH-MH to arrange such consultation within two weeks; failing to arrange for an MRI to evaluate the full extent of Plaintiff's spinal injuries despite Plaintiff's severe symptoms including paralysis, extreme pain, and numbness from the waist down; discontinuing Plaintiff's prescribed pain medication without medical justification; misrepresenting the severity and extent of Plaintiff's injuries as revealed by the September 22, 2023 MRI; and attempting to discharge Plaintiff from medical housing despite his inability to walk and need for ongoing medical supervision.

44. Plaintiff suffered injuries including permanent paralysis, permanent neurological damage, and chronic severe pain.

11

45. Dr. Myers's breach of the standard of care was a proximate cause of Plaintiff's injuries, as prompt arrangement of neurosurgical consultation and appropriate diagnostic imaging would have led to timely intervention that would have prevented or minimized the permanent neurological damage resulting from the twenty-two day delay in neurosurgical care.

46. Dr. Myers is liable to Plaintiff for compensatory damages.

## COUNT IV
### Americans With Disabilities Act — Title II
### Against Karales in his official capacity as IDOC

47. Plaintiff incorporates by reference all preceding paragraphs.

48. Plaintiff is a qualified individual with a disability, having a physical impairment (spinal fractures, paralysis, and nerve damage) that substantially limits major life activities including walking, standing, and caring for himself, and meeting the essential eligibility requirements for IDOC's housing program.

49. IDOC is a public entity subject to Title II of the ADA as a state agency operating correctional facilities.

50. Plaintiff was denied the benefits of IDOC's housing services by being placed in cells on September 1 and 2, 2023, that lacked adequate grab bars necessary for safe wheelchair transfers, despite his paralysis and need for accessible facilities.

51. Such denial of benefits was by reason of Plaintiff's disability, as Plaintiff required grab bars to safely access basic facilities due to his wheelchair use and paralysis.

52. IDOC is liable to Plaintiff for compensatory damages.

## COUNT V
### Rehabilitation Act § 504
### Against Karales in his official capacity as IDOC

53. Plaintiff incorporates by reference all preceding paragraphs.

54. Plaintiff is an individual with a disability, having a physical impairment that substantially limits major life activities.

55. Plaintiff is otherwise qualified to participate in IDOC's housing program with or without reasonable accommodations.

56. On information and belief, IDOC receives federal financial assistance.

57. Plaintiff was denied the benefits of IDOC's housing program by being placed in inaccessible cells on September 1 and 2, 2023, that lacked grab bars necessary for his wheelchair use and safe transfers.

58. Such denial was solely by reason of Plaintiff's disability.

59. IDOC is liable to Plaintiff for compensatory damages.

## COUNT VI
### Medical Malpractice
### Against Pinckneyville Community Hospital

60. Plaintiff incorporates by reference all preceding paragraphs.

61. A duty of care existed between PCH and Plaintiff when PCH undertook his emergency medical treatment on September 1, 2023.

62. PCH breached the applicable standard of care by failing to order an MRI and other testing to evaluate for spinal cord compression and nerve impingement despite Plaintiff's presentation with loss of consciousness, severe

13

spinal trauma, visual disturbances, complete numbness from the waist down, and loss of bowel control; performing only a limited CT scan; failing to conduct a proper neurological examination; and discharging Plaintiff without the back brace PCH's own staff had prescribed.

63.    Plaintiff suffered injuries including permanent paralysis, permanent neurological damage, and chronic severe pain.

64.    PCH's breach of the standard of care was a proximate cause of Plaintiff's injuries, as an MRI on September 1, 2023, would have immediately diagnosed his nerve impingement and serious spinal injuries, leading to prompt neurosurgical intervention that would have prevented or minimized permanent neurological damage, and provision of the prescribed back brace would have prevented the September 2, 2023 fall that aggravated his condition.

65.    PCH is liable to Plaintiff for compensatory damages.

## COUNT VII
### Medical Malpractice
### Against Southern Illinois Hospital AND John Davidson

66.    Plaintiff incorporates by reference all preceding paragraphs.

67.    A duty of care existed between SIH-MH (and John Davidson) and Plaintiff when SIH-MH (and John Davidson) undertook his emergency medical treatment on September 2, 2023.

68.    SIH-MH (and John Davidson) breached the applicable standard of care by failing to order an MRI to evaluate for nerve compression and impingement despite Plaintiff's confirmed spinal fractures on CT scan, severe pain, and continued

14

neurological symptoms including numbness from the waist down; performing only a non-contrast CT scan inadequate for detecting soft tissue injuries; and instructing that Plaintiff wait two weeks for neurosurgical consultation rather than arranging immediate evaluation given the severity of his presentation.

69.     Plaintiff suffered injuries including permanent paralysis, permanent neurological damage, and chronic severe pain.

70.     SIH-MH's (and John Davidson)'s breach of the standard of care was a proximate cause of Plaintiff's injuries, as an MRI on September 2, 2023, would have diagnosed Plaintiff's nerve impingement and vertebral hemangioma with edema, leading to urgent neurosurgical intervention that would have prevented or minimized the twenty-two day delay in treatment and the resulting permanent neurological damage.

71.     SIH-MH and John Davidson are liable to Plaintiff for compensatory damages.

### PRAYER FOR RELIEF

WEREFORE, Plaintiff prays that this Court issue judgment in Plaintiff's favor and award Plaintiff: compensatory damages, punitive damages, costs, attorney fees, and any other relief that the Court deems just and equitable.

### JURY TRIAL REQEUSTED

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff requests a trial by jury on all issues so triable.

15

Dated: May 14, 2026                    Respectfully submitted,

                                       */s/ Stephen H. Weil*
                                       Stephen H. Weil
                                       Romanucci & Blandin LLC
                                       321 N. Clark Street
                                       Suite 900
                                       Chicago, IL 60654
                                       312-458-1000
                                       sweil@rblaw.net

                                       *Counsel for Plaintiff*