# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Bradley Cornille, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 24-cv-01202-SMY |
| | ) | |
| Percy Myers, | ) | |
| Wexford Health Sources, | ) | Hon. Judge Staci m. Yandle |
| Jamie Karales, | ) | Judge Presiding |
| Pinckneyville Community Hospital, | ) | |
| Southern Illinois Hospital, and | ) | |
| John Davidson, | ) | |
| | ) | |
| Defendants | ) | |

## DEFENDANT PERCY MYERS's ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT AT LAW

NOW COMES the Defendant, PERCY MYERS (hereinafter, "Dr. Myers" or "Defendant")), by and through his attorneys, CONNOLLY KRAUSE LLC, and for his Answer to Plaintiff, BRADLEY CORNILLE's Second Amended Complaint at Law, hereby states as follows:

### JURISDICTION AND VENUE

1.     This court has jurisdiction under 28 U.S.C. §§1331 and 1343(a)(3) (federal civil rights claims), 28 U.S.C. § 1367(a) (supplemental jurisdiction over state law claims), and 42 U.S.C. §12133 (ADA claims).

**ANSWER:    Defendant admits subject matter jurisdiction pursuant to 28 U.S.C. §1331 and 1343.  Defendant admits that Plaintiff brings his federal civil rights claims pursuant to 42 U.S.C. §1983 and 42 U.S.C. §12133.  Defendant admits subject matter jurisdiction pursuant to 28 U.S.C. §1367.  Defendant denies any liability.**

2.     Venue is proper in this District under 28 U.S.C. §1391(b)(2) because the events giving rise to this action occurred in the Sothern District of Illinois.

1

**ANSWER:**   **Defendant admits that venue is proper.  Defendant denies any events or omissions alleged give rise to Plaintiff's claims.  Defendant denies liability.**

**PARTIES**

3.      Plaintiff Bradley J. Cornille Sr. is an individual current incarcerated at Dixon Correctional Center.  At all relevant times, Plaintiff was incarcerated at Pinckneyville Correctional Center in Pinckneyville, Illinois.

**ANSWER:**   **Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 3.**

4.      Defendant Dr. Percy Myers is the Medical Director at Pinckneyville Correctional Center, employed by Wexford health Sources, Inc., which contracts with the Illinois Department of Corrections (IDOC) to provide medical services to incarcerated individuals.  Dr. Myers is sued in his individual capacity.

**ANSWER:**   **Defendant admits that at certain times relevant to the allegations in this complaint he was the medical director at Pinckneyville Correctional Center and employed by Wexford Health Sources, Inc.  Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.**

5.      Defendant Pinckneyville Community Hospital (PCH) is a hospital located in Pinckneyville, Illinois 62274.

**ANSWER:**   **Defendant admits the allegations of this paragraph.**

6.      Defendant Southern Illinois Hospital (SIH-MH) is a hospital located at 405 W. Jackson Street, Carbondale, Illinois 62901.

**ANSWER:**   **Defendant admits the allegations of this paragraph.**

7.      John Davidson is a physician's assistant at SIH-MH.

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 7.**

8.    Defendant Jamie Karales is assistant warden of Pinckneyville Correctional Center and for purposes of the Americans with Disabilities Act and the Rehabilitation Act he is sued in his official capacity as Illinois Department of Corrections (IDOC).  The IDOC is a state agency responsible for the operation of correctional facilities in Illinois, including Pinckneyville Correctional Center.  The IDOC receives federal funding.

**ANSWER:    Defendant admits that the IDOC is a state agency that operates correctional facilities in Illinois.  Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.**

### FACTUAL ALLEGATIONS

*September 1, 2023 Fall and Initial Medical Response*

9.    On September 1, 2023, at approximately 7:00 p.m., Plaintiff slipped in vomit that had been left on the floor of his housing unit at Pinckneyville Correctional Center.

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 9.**

10.    Plaintiff's fall was severe: his feet went airborne, and his head, neck and back forcefully struck the concrete floor.  Plaintiff briefly lost consciousness and experienced extreme pain in his head, neck, and back.

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 10.**

11.    Sometime after the fall, plaintiff was taken to the prison's health care unit (HCU) in a wheelchair.

3

**ANSWER:**     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 11.

12.     In the HCU a nurse placed Plaintiff in a cervical collar and called an ambulance.

**ANSWER:**     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 12.

13.     While waiting, Plaintiff experienced total numbness from the waist down and lost control of his bowels.

**ANSWER:**     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 13.

*Treatment at Pinckneyville Community Hospital (September 1, 2023)*

14.     Plaintiff was transported to Pinckneyville Community Hospital (PCH) emergency room.

**ANSWER:**     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 14.

15.     PCH staff were fully briefed on the severity of Plaintiff's fall, including his loss of consciousness, visual disturbances, numbness from the waist down, and loss of bowel control.

**ANSWER:**     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 15.

16.     These were symptoms of a spinal cord injury that would require diagnosis of potential soft-tissue spinal injury, such as nerve compression or impingement.

**ANSWER:**     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 16.

17.     Despite these symptoms indicating potential spinal cord injury, PCH medical staff failed to order testing in order to check for such injury.

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 17.**

18.     PCH performed only a baseline CT scan of Plaintiff's neck and lower lumbar region.

**ANSWER:    Defendant admits that on September 1, 2023, PCH performed a CT scan of Plaintiff's cervical, thoracic, and lumbar spine, as well as a CT scan of Plaintiff's head/brain.  Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 18.**

19.     PCH staff prescribed a back brace for Plaintiff, but failed to provide Plaintiff with one.

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 19.**

20.     PCH discharged Plaintiff prematurely and without the back brace that PCH's own medical staff had ordered and stated Plaintiff needed.

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 20.**

21.     A back brace would have stabilized Plaintiff's back and helped prevent further injury.

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 21.**

*September 2, 2023 Second Fall*

19.     Upon his return from PCH to the prison, Plaintiff was unable to walk.

**ANSWER:     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 19.**

20.     He was placed in a cell in the HCU that lacked grab bars or any other devices to assist persons who are paraplegic.

**ANSWER:     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 20.**

21.     On September 2, 2023, a nurse ordered Plaintiff to transfer from the bed to the wheelchair, but left without providing assistance.

**ANSWER:     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 21.**

22.     Plaintiff attempted to perform the move, but without grab bars, an aide, or the stability of a back brace, Plaintiff fell to the floor.

**ANSWER:     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 22.**

23.     Plaintiff experienced extreme shooting pain on his right side.

**ANSWER:     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 23.**

*Treatment at Southern Illinois Hospital (September 2, 2023)*

22.     After his September 2 fall, Plaintiff was transported to Southern Illinois Hospital (SIH-MH) emergency room.

**ANSWER:     Defendant admits the allegations of this paragraph.**

6

23.     Plaintiff symptoms were exacerbated from September 1, again indicating a potential soft-tissue spinal injury, such as nerve compression or impingement.

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 23.**

24.     SIH-MH staff, however, including on information and belief John Davidson, performed a CT without contrast, which is ineffective for detecting soft tissue injuries.

**ANSWER:    Defendant admits that on September 2, 2023, SIH Memorial Hospital Carbondale performed a CT scan without contrast of Plaintiff's lumbar spine.  Defendant denies the remaining allegations of Paragraph 24.**

25.     The CT scan confirmed several spinal fractures.

**ANSWER:    Defendant admits that the radiologist who interpreted the CT scan taken SIH Memorial Hospital Carbondale on September 2, 2023, charted the following impressions: "(1) Nondisplaced fracture at the right transverse process of L2 and L4[;] (2) Minimally-displaced fracture of the right transverse process of L3[;] (3) Nondisplaced fracture at the posterior margin of the the [*sic*] right superior articulating facet of L3[;] and, (4) Normal anatomic alignment is maintained.  No bony encroachment on the spinal canal. The remaining osseous structures appear intact."   Defendant denies the remaining allegations of this paragraph.**

26.     The fractures also indicated the potential for soft tissue injuries, but SIH-MH staff, including on information and belief John Davidson, did not attempt to perform testing that might identify such an injury.

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 26.**

27.    SIH-MH provided Plaintiff with a full upper body brace and instructed that Plaintiff be provided with an appointment with a neurosurgeon within two weeks.

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 27.**

*Dr. Myers's Denial of Care and Retaliation (September 3-15, 2023)*

25.    On information and belief, Dr. Myers or another physician employed by Wexford received the results of the SIH-MH and PCH CT scans and neurosurgeon recommendations but failed to arrange for immediate additional testing and failed to arrange for an immediate neurosurgery appointment.

**ANSWER:    Defendant admits that he received the results of Plaintiff's CT scans of his cervical, thoracic, and lumber spine on September 1, 2023, at PCH.  Defendant admits that he received the results of Plaintiff's CT scan of his lumber spine on September 2, 2023, at SIH Memorial Hospital Carbondale.  Defendant denies the remaining the allegations of this paragraph.**

26.    From September 3 through September 11, 2023, plaintiff informed multiple nurses of his symptoms, including extreme back pain and numbness below the waist.  Every nurse denied these requests, stating they were acting "per Dr. Myers' orders."

**ANSWER:    Defendant denies ordering or telling nurses to deny Plaintiff's requests. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this Paragraph 26**

27.    On September 11, 2023, physical therapist CPT Jen removed Plaintiff's walker, stating "per Dr. Myers" that Plaintiff was not allowed to walk until his back was "fixed."

**ANSWER:    Defendant denies that he denied or ordered other medical staff to deny to Plaintiff any medical care, walker, or accommodation.  Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this Paragraph 27.**

28.    On September 13, 2023, Plaintiff was seen by Dr. Myers who verbally attacked and harassed Plaintiff, referencing prior grievances and Plaintiff's pending federal civil rights lawsuit against Dr. Myers (Case No. 22-cv-1988-MAB).

**ANSWER:    Defendant denies the allegations of this paragraph.**

29.    During this conversation Dr. Myers did not attempt to determine whether Plaintiff was in pain, but he nevertheless discontinued Plaintiff's pain medication (Tramadol), telling Plpaintiff, "I will do nothing for you."

**ANSWER:    Defendant denies the allegations of this paragraph.**

30.    On or about September 15, Dr. Myers attempted to discharge Plaintiff from the HCU to general population, where the wheelchair Plaintiff had been provided would be confiscated.  During this attempt to discharge Plaintiff, Dr. Myers said that Plaintiff had only "one very small fracture" with "no displacement."

**ANSWER:    Defendant denies the allegations of this paragraph.**

31.    Plaintiff had not stood or walked in fourteen days at this point.

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 31.**

32.    In the presence of witnesses, including Warden David Mitchell, Plaintiff expressed his concerns and asked Dr. Myers to allow Plaintiff to test the walker while still in the HCU so that medical care would be available if Plaintiff fell.

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 32.

33.    Dr. Myers refused, stating: "I need this cell.  I do not care if you fall and get hurt but it will not be done here in front of me, you will do it out in the unit you're going to."

**ANSWER:**    Defendant denies the allegations of this paragraph.

34.    Warden Mitchell intervened and required Dr. Myers to allow Plaintiff to keep his wheelchair and be moved to an ADA-accessible cell.

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 34.

*MRI Results Prove Dr. Myers Misrepresented Plaintiff's Condition*

35.    On information and belief, sometime before September 22, 2023, Plaintiff's case was sent to a neurosurgeon, who insisted on that an MRI be performed before a surgical consultation.

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 35.

36.    On September 22, 2023, Plaintiff underwent an MRI at SIH-MH.

**ANSWER:**    Defendant admits that on September 22, 2023, an MRI was taken of Plaintiff's lumbar spine at SIH Memorial Hospital of Carbondale.

37.    The MRI results revealed:

● Vertebral body hemangioma at L2

● Edema enhancement in the right transverse process of L2, L3, and L4

● Minimally displaced fractures at these locations

● Three bulging discs

10

**ANSWER:**   **Defendant admits that the radiologist who interpreted the MRI scan taken SIH Memorial Hospital Carbondale on September 22, 2023, charted the following impressions: "Edema and enhancement seen in the right transverse processes of L2 - L4 in association with fractures at these locations.  No evidence of cauda equina or nerve root injury.  Lumbar alignment normal.  Multilevel degenerative spondylosis without high-grade spinal canal or neural foraminal stenosis."  Defendant denies the remaining allegations of this paragraph.**

38.   These results directly contradicted Dr. Myers's statement on September 15, 2023, that Plaintiff had only "one very small fracture" with "no displacement."

**ANSWER:**   **Defendant denies the allegations of this paragraph.**

39.   The MRI results, in conjunction with the September 2, 2023 CT results, demonstrated that Plaintiff's injuries were far more serious than Dr. Myers had represented.

**ANSWER:**   **Defendant denies the allegations of this paragraph.**

40.   Upon returning from the MRI, Dr. Myers and Health Care Unit Administrator Christine Brown attempted to force Plaintiff into an examination with Dr. Myers by threatening disciplinary action.

**ANSWER:**   **Defendant denies the allegations of this paragraph.**

41.   Plaintiff begged to see another provider.  Although two other qualified providers were available and willing to see Plaintiff, Dr. Myers and Brown refused.

**ANSWER:**   **Defendant denies the allegations of this paragraph.**

*Alternative Provider Confirms Need for Neurosurgery*

41.   On September 27, 2023, after Plaintiff declared a hunger strike out of fear for his safety and need for appropriate medical care, he was seen by Physician Assistant A. Desai.

11

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 41.**

42.    PA Desai examined Plaintiff's medical records and stated that Dr. Myers's handwriting and alterations made it difficult to understand the full extent of Plaintiff's injuries.

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 42.**

43.    After reviewing the September 2, 2023 CT results and September 22, 2023 MRI results, PA Desai stated: "You should have already been to see a neurosurgeon, most likely post-op.  I don't know why Myers has not done an emergency collegial.  I will order the neurosurgery collegial now."

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 43.**

44.    When spinal cord compression from vertebral hemangiomas is left untreated, it can cause permanent nerve damage and permanent incontinence.

**ANSWER:    Defendant denies spinal cord compression.    Defendant denies the remaining allegations of this paragraph.**

45.    Delayed diagnosis and treatment of aggressive vertebral hemangiomas can increase morbidity.  Early intervention is crucial for achieving favorable outcomes to minimize permanent damage.

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 45.**

46.    Plaintiff subsequently received specialized medical attention, but the damage has proven permanent and severe.

**ANSWER:    Defendant denies the allegations of this paragraph.**

47.    Plaintiff has been unable to walk since September 1, 2023.

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 47.**

48.    Plaintiff is permanently paralyzed and he is incontinent.

**ANSWER:    Defendant denies the allegations of this paragraph.**

49.    Plaintiff has suffered paralysis, incontinence, and severe physical and emotional pain as a result of the defendants' foregoing acts and omissions.

**ANSWER:    Defendant denies the allegations of this paragraph.**

### COUNT I:
### Eight Amendment Deliberate Indifference
### Against Dr. Percy Myers

50.    Plaintiff incorporates by reference all preceding paragraphs.

**ANSWER:    Defendant incorporates by reference his answers to all preceding paragraphs as if set forth fully herein.**

51.    Plaintiff had an objectively serious medical need, including spinal fractures at multiple levels, vertebral body hemangioma with edema, nerve compression, paralysis from the waist down, and loss of bowel control.

**ANSWER:    Defendant admits spinal transverse process fractures.    Defendant admits as of September 22, 2023, hemangioma at L2.    Defendant denies the remaining allegations of this paragraph.**

52.    Dr. Myers knew of facts from which he could infer that Plaintiff faced a substantial risk of serious harm, including through his direct examination of Plaintiff, review of CT and MRI results confirming serious spinal injuries, and Plaintiff's reports of severe pain and paralysis.

13

**ANSWER:    Defendant denies the allegations of this paragraph.**

53.    Dr. Myers actually drew the inference that Plaintiff faced a substantial risk of serious harm.

**ANSWER:    Defendant denies the allegations of this paragraph.**

54.    Dr. Myers consciously disregarded that risk by failing to arrange for prompt neurosurgical consultation, discontinuing Plaintiff's pain medication, misrepresenting the severity of Plaintiff's injuries, and attempting to discharge Plaintiff from medical housing despite his inability to walk.

**ANSWER:    Defendant denies the allegations of this paragraph.**

55.    Dr. Myers's deliberate indifference directly caused Plaintiff's injuries, including a twenty-two day delay in neurosurgical care, permanent paralysis, permanent nerve damage, and chronic severe pain.

**ANSWER:    Defendant denies the allegations of this paragraph.**

56.    Dr. Myers is liable to Plaintiff for compensatory and punitive damages in his individual capacity.

**ANSWER:    Defendant denies the allegations of this paragraph.**

### COUNT II
### First Amendment Retaliation
### Against Dr. Percy Myers

57.    Plaintiff incorporates by reference all preceding paragraphs.

**ANSWER:    Defendant incorporates by reference his answers to all preceding paragraphs as if set forth fully herein.**

14

58.    Plaintiff engaged in activity protected by the First Amendment by filing grievances against Dr. Myers and pursuing a federal civil rights lawsuit against him (Case No. 22-cv-1988-MAB).

**ANSWER:    Defendant denies the allegations of this paragraph.**

59.    Dr. Myers took adverse action against Plaintiff by discontinuing his pain medication, refusing to arrange neurosurgical consultation, attempting to discharge Plaintiff from medical housing, and explicitly stating "I will do nothing for you."

**ANSWER:    Defendant denies the allegations of this paragraph.**

60.    There was a causal connection between Plaintiff's protected activity and Dr. Myers's adverse actions, as demonstrated by Dr. Myers's explicit reference to Plaintiff's grievances and lawsuit, the temporal proximity of the retlaiati9on, and Dr. Myers's retaliatory statements.

**ANSWER:    Defendant denies the allegations of this paragraph.**

61.    Dr. Myers's adverse actions, including denial of pain medication and necessary neurosurgical care, would deter a person of ordinary firmness from engaging in protected conduct.

**ANSWER:    Defendant denies the allegations of this paragraph.**

62.    Dr. Myers is liable to Plaintiff for compensatory and punitive damages in his individual capacity.

**ANSWER:    Defendant denies the allegations of this paragraph.**

**COUNT III**
**Medical Negligence**
**Against Dr. Percy Myers**

41.    Plaintiff incorporates by reference all pr4eceding paragraphs.

15

**ANSWER:** **Defendant incorporates by reference his answers to all preceding paragraphs as if set forth fully herein.**

42.   A duty of care existed between Dr. Myers and Plaintiff as Dr. Myers, acting as Medical Director at Pinckneyville Correctional Center, was responsible for Plaintiff's medical care from September 3, 2023, through at least September 27, 2023.

**ANSWER:** **Defendant denies the allegations of this paragraph.**

43.   Dr. Myers breached the applicable standard of care by failing to arrange for prompt neurosurgical consultation despite CT scan results confirming spinal fractures and instructions from SIH-MH to arrange such consultation within two weeks; failing to arrange for an MRI to evaluate the full extent of Plaintiff's spinal injuries despite Plaintiff's severe symptoms including paralysis, extreme pain, and numbness from the waist down; discontinuing Plaintiff's prescribed pain medication without medical justification; misrepresenting the severity and extent of Plaintiff's injuries as revealed by the September 22, 2023 MRI; and attempting to discharge Plaintiff from medical housing despite his inability to walk and need for ongoing medical supervision.

**ANSWER:** **Defendant denies the allegations of this paragraph.**

44.   Plaintiff suffered injuries including permanent paralysis, permanent neurological damage, and chronic severe pain.

**ANSWER:** **Defendant denies the allegations of this paragraph.**

45.   Dr. Myers's breach of the standard of care was a proximate cause of Plaintiff's injuries, as prompt arrangement of neurosurgical consultation and appropriate diagnostic imaging would have led to timely intervention that would have prevented or minimized the permanent neurological damage resulting from the twenty-two day delay in neurosurgical care.

**ANSWER:** **Defendant denies the allegations of this paragraph.**

46.     Dr. Myers is liable to Plaintiff for compensatory damages.

**ANSWER:    Defendant denies the allegations of this paragraph.**

**COUNT IV**
**Americans With Disabilities Act – Title II**
**Against Karales in his official capacity as IDOC**

47.     Plaintiff incorporates by reference all preceding paragraphs.

**ANSWER:    Defendant incorporates by reference his answers to all preceding paragraphs as if set forth fully herein.**

48.     Plaintiff is a qualified individual with a disability, having a physical impairment (spinal fractures, paralysis, and nerve damage) that substantially limits major life activities including walking, standing, and caring for himself, and meeting the essential eligibility requirements for IDOC's housing program.

**ANSWER:    The allegations of this paragraph are not directed against this Defendant.  If the allegations of this paragraph are directed against this Defendant, then Defendant denies the allegations of this paragraph.**

49.     IDOC is a public entity subject to Title II of the ADA as a state agency operating correctional facilities.

**ANSWER:    The allegations of this paragraph are not directed against this Defendant.  If the allegations of this paragraph are directed against this Defendant, then Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 49.**

50.     Plaintiff was denied the benefits of IDOC's housing services by being placed in cells on September 1 and 2, 2023, that lacked adequate grab bars necessary for safe wheelchair transfers, despite his paralysis and need for accessible facilities.

17

**ANSWER:** **The allegations of this paragraph are not directed against this Defendant. If the allegations of this paragraph are directed against this Defendant, then Defendant denies the allegations of this paragraph.**

51.    Such denial of benefits was by reason of Plaintiff's disability, as Plaintiff required grab bars to safely access basic facilities due to his wheelchair use and paralysis.

**ANSWER:** **The allegations of this paragraph are not directed against this Defendant. If the allegations of this paragraph are directed against this Defendant, then Defendant denies the allegations of this paragraph.**

52.    IDOC is liable to Plaintiff for compensatory damages.

**ANSWER:** **The allegations of this paragraph are not directed against this Defendant. If the allegations of this paragraph are directed against this Defendant, then Defendant denies the allegations of this paragraph.**

**COUNT V**
**Rehabilitation Act §504**
**Against Karales in his official capacity as IDOC**

53.    Plaintiff incorporates by reference all preceding paragraphs.

**ANSWER:** **Defendant incorporates by reference his answers to all preceding paragraphs as if set forth fully herein.**

54.    Plaintiff is an individual with a disability, having a physical impairment that substantially limits major life activities.

**ANSWER:** **The allegations of this paragraph are not directed against this Defendant. If the allegations of this paragraph are directed against this Defendant, then Defendant denies the allegations of this paragraph.**

18

55.      Plaintiff is otherwise qualified to participate in IDOC's housing program with or without reasonable accommodations.

**ANSWER:   The allegations of this paragraph are not directed against this Defendant.  If the allegations of this paragraph are directed against this Defendant, then Defendant denies the allegations of this paragraph.**

56.      On information and belief, IDOC receives federal financial assistance.

**ANSWER:   The allegations of this paragraph are not directed against this Defendant.  If the allegations of this paragraph are directed against this Defendant, then Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 56.**

57.      Plaintiff was denied the benefits of IDOC's housing program by being placed in inaccessible cells on September 1 and 2, 2023, that lacked grab bars necessary for his wheelchair use and safe transfers.

**ANSWER:   The allegations of this paragraph are not directed against this Defendant.  If the allegations of this paragraph are directed against this Defendant, then Defendant denies the allegations of this paragraph.**

58.      Such denial was solely by reason of Plaintiff's disability.

**ANSWER:   The allegations of this paragraph are not directed against this Defendant.  If the allegations of this paragraph are directed against this Defendant, then Defendant denies the allegations of this paragraph.**

59.      IDOC is liable to Plaintiff for compensatory damages.

**ANSWER:    The allegations of this paragraph are not directed against this Defendant.  If the allegations of this paragraph are directed against this Defendant, then Defendant denies the allegations of this paragraph.**

**COUNT VI**
**Medical Malpractice**
**Against Pinckneyville Community Hospital**

60.    Plaintiff incorporates by reference all preceding paragraphs.

**ANSWER:    Defendant incorporates by reference his answers to all preceding paragraphs as if set forth fully herein.**

61.    A duty of care existed between PCH and Plaintiff when PCH undertook his emergency medical treatment on September 1, 2023.

**ANSWER:    The allegations of this paragraph are not directed against this Defendant.  If the allegations of this paragraph are directed against this Defendant, then Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 61.**

62.    PCH breached the applicable standard of care by failing to order an MRI and other testing to evaluate for spinal cord compression and nerve impingement despite Plaintiff's presentation with loss of consciousness, severe spinal trauma, visual disturbances complete numbness from the waist down, and loss of bowel control; performing only a limited CT scan; failing to conduct a proper neurological examination; and discharging Plaintiff without the back brace PCH's own staff had prescribed.

**ANSWER:    The allegations of this paragraph are not directed against this Defendant.  If the allegations of this paragraph are directed against this Defendant, then Defendant denies the allegations of this paragraph.**

20

63.    Plaintiff suffered injuries including permanent paralysis, permanent neurological damage, and chronic severe pain.

**ANSWER:    The allegations of this paragraph are not directed against this Defendant.  If the allegations of this paragraph are directed against this Defendant, then Defendant denies the allegations of this paragraph.**

64.    PCH's breach of the standard of care was a proximate cause of plaintiff's injuries, as an MRI on September 1, 2023, would have immediately diagnosed his nerve impingement and serious spinal injuries, leading to prompt neurosurgical intervention that would have prevented or minimized permanent neurological damage, and provision of the prescribed back brace would have prevented the September 2, 2023 fall that aggravated his condition.

**ANSWER:    The allegations of this paragraph are not directed against this Defendant.  If the allegations of this paragraph are directed against this Defendant, then Defendant denies the allegations of this paragraph.**

65.    PCH is liable to plaintiff for compensatory damages.

**ANSWER:    The allegations of this paragraph are not directed against this Defendant.  If the allegations of this paragraph are directed against this Defendant, then Defendant denies the allegations of this paragraph.**

**COUNT VII**
**Medical Malpractice**
**Against Southern Illinois Hospital AND John Davidson**

66.    Plaintiff incorporates by reference all preceding paragraphs.

**ANSWER:    Defendant incorporates by reference his answers to all preceding paragraphs as if set forth fully herein.**

21

67.     A duty of care existed between SIH-MH (and John Davidson) and Plaintiff when SIH-MH (and John Davidson) undertook his emergency medical treatment on September 2, 2023.

**ANSWER:   The allegations of this paragraph are not directed against this Defendant.  If the allegations of this paragraph are directed against this Defendant, then Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 67.**

68.     SIH-MH (and John Davidson) breached the applicable standard of care by failing to order an MRI to evaluate for nerve compression and impingement despite Plaintiff's confirmed spinal fractures on CT scan, severe pain, and continued neurological symptoms including numbness from the waist down; performing only a non-contrast CT scan inadequate for detecting soft tissue injuries; and instructing that Plaintiff wait two weeks for neurosurgical consultation rather than arranging immediate evaluation given the severity of his presentation.

**ANSWER:   The allegations of this paragraph are not directed against this Defendant.  If the allegations of this paragraph are directed against this Defendant, then Defendant denies the allegations of this paragraph.**

69.     Plaintiff suffered injuries including permanent paralysis, permanent neurological damage, and chronic severe pain.

**ANSWER:   The allegations of this paragraph are not directed against this Defendant.  If the allegations of this paragraph are directed against this Defendant, then Defendant denies the allegations of this paragraph.**

70.     SIH-MH's (and John Davidson)'s breach of the standard of care was a proximate cause of Plaintiff's injuries, as an MRI on September 2, 2023, would have diagnosed Plaintiff's nerve impingement and vertebral hemangioma with edema, leading to urgent neurosurgical

intervention that would have prevented or minimized the twenty-two day delay in treatment and the resulting permanent neurological damage.

**ANSWER:    The allegations of this paragraph are not directed against this Defendant.  If the allegations of this paragraph are directed against this Defendant, then Defendant denies the allegations of this paragraph.**

71.    SIH-MH and John Davidson are liable to Plaintiff for compensatory damages.

**ANSWER:    The allegations of this paragraph are not directed against this Defendant.  If the allegations of this paragraph are directed against this Defendant, then Defendant denies the allegations of this paragraph.**

## PRAYER FOR RELIEF

WEREFORE, Plaintiff prays that this Court issue judgment in Plaintiff's favor and award Plaintiff: compensatory damages, punitive damages, costs, attorney fees, and any other relief that the Court deems just and equitable.

**ANSWER:    Defendant denies that Plaintiff is entitled to judgment in his favor against Defendant Dr. Percy Myers.   Defendant denies that Plaintiff is entitled to compensatory damages.  Defendant denies that Plaintiff is entitled to punitive damages. Defendant denies that Plaintiff is entitled to attorney's fees and costs.  Defendant denies that Plaintiff is entitled to other and further relief.  Defendant denies the remaining allegations of this paragraph.**

## JURY TRIAL REQUESTED

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff requests a trial by jury on all issues so triable.

**ANSWER:**    Defendant Dr. Percy Myers, pursuant to Rule 38 of the Federal Rules of Civil Procedure requests, a jury trial.

**WHEREFORE, Defendant, PERCY MYERS, respectfully requests this Honorable Court to enter an Order granting judgment in his favor and against Plaintiff, dismissing his Second Amended Complaint (ECF #99) with prejudice and with costs, including attorney fees pursuant to 42 U.S.C. § 1988(b), and for such other relief as this Court deems appropriate and just.**

## GENERAL DENIAL

Defendant, PERCY MYERS, makes a general denial to all the allegations in Plaintiff's Second Amended Complaint (ECF #99) not expressly denied above.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Defendant, PERCY MYERS, hereby demands a trial by jury.

## AFFIRMATIVE DEFENSES

Without waiving the obligations of Plaintiff to prove every factual element of his claims, and without prejudice to the denials of the allegations contained in Plaintiff's Second Amended Complaint (ECF #99), as articulated in this answer of PERCY MYERS (said answer is incorporated and adopted herein by reference), Defendant, PERCY MYERS, states as and for his Affirmative Defenses as follows:

I.    **Qualified Immunity**

24

At all times relevant to Plaintiff's claims, Defendant Dr. Myers acted in the good faith performance of his official duties without violating Plaintiff's clearly established constitutional rights. Defendant Dr. Myers is thus protected from liability by the doctrine of qualified immunity.

1.      At all times relevant herein, Defendant Dr. Myers acted in good faith in the performance of his official duties and without violating the Plaintiff's statutory or constitutional rights of which a reasonable person would have known. Therefore, the doctrine of qualified immunity protects this Defendant from this lawsuit. "Qualified immunity 'shields [officials] from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Leaf v. Shelnutt*, 400 F.3d 1070, 1080 (7th Cir. 2005) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

2.      The United States Supreme Court regards as beneficial the two-step sequence for resolving government officials' immunity claims articulated in *Saucier v. Katz*, 533 U.S. 194, 200 (2001). S*ee also Pearson*, 555 U.S. at 236 ("Although we now hold that the *Saucier* protocol should not be regarded as mandatory in all cases, we continue to recognize that it is often beneficial…"). First, a court must decide whether the facts, as alleged by the plaintiff, make out a violation of a constitutional right. *Id.* at 232. Second, the court must decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id.* In order to show that the right was clearly established, the Plaintiff must show that the defendant's "violation [of the constitutional right] was so clear that an official would realize he or she was violating an inmate's constitutional rights." *Borello v. Allison*, 446 F.3d 742, 750 (7th Cir. 2006).

25

3.	Plaintiff's Second Amended Complaint (ECF #99) alleges that Defendant Dr. Myers failed to provide Plaintiff with medical care sufficient to meet constitutional requirements. At no time did Defendant Dr. Myers provide healthcare services that were so clearly a violation of Plaintiff's constitutional rights that Defendant would realize its conduct was tantamount to cruel and unusual punishment.  Thus, the doctrine of qualified immunity applies and shields it from this litigation.

4.	Defendant further recognizes that the Seventh Circuit has suggested, *in dicta*, that qualified immunity is not available to private medical providers in state-run prisons.  *See Petties v. Carter*, 836 F.3d 722, 733-34 (7th Cir. 2016).  However, the United States Supreme Court's decision in *Filarsky v. Delia* controls and establishes that immunity is available to a government's private contractors who are performing jobs that, otherwise, would be performed by state agents who unquestionably could assert qualified immunity.

5.	In *Filarsky*, the Supreme Court unanimously held that a private attorney hired by a municipality to perform a task was entitled to claim qualified immunity.  *Filarsky v. Delia*, 566 U.S. 377, 390 (2012) ("Affording immunity not only to public employees but also to others acting on behalf of the government similarly serves to 'ensure that talented candidates are not deterred by the threat of damages suits from entering public service.'") (internal quotation marks omitted.)

6.	Other circuits follow *Filarsky* and apply qualified immunity to private medical providers working in state-run prisons.  In a decision handed down after *Petties*, the Tenth Circuit Court of Appeals found that *Filarsky* controlled and applied qualified immunity to a private doctor working in a state prison.  *Estate of Lockett v. Fallin*, 841 F.3d 1098, 1108-09 (10th Cir. 2016) ("Dr. Doe stands in the same position as the attorney in *Filarsky* – he was a private party hired to

26

do a job for which a permanent government employee would have received qualified immunity.
Thus, we conclude that qualified immunity applies to Dr. Doe.").

7.      The Supreme Court's decision in *Filarsky* combined with the case law of other
Circuit Courts of Appeal establish that qualified immunity applies to private medical providers
performing medical services in a state-run prison.  Thus, Defendant Dr. Myers has a non-frivolous
argument for extending, modifying, or reversing existing law in this Circuit.

## II.      Official Capacity Claim Barred

To the extent that Plaintiff's claims are against Defendant Dr. Myers in his official
capacity the claims are barred by the Eleventh Amendment.

## III.      Failure to Attach Affidavit and Report under 735 ILCS 5/2-622

1.      In Count Three of the Second Amended Complaint (ECF #99), Plaintiff has
alleged allegations against Defendant Dr. Myers that are based upon alleged acts of medical
malpractice/professional negligence in the delivery of health care to Plaintiff, State Law Claims.

2.      Illinois requires that Plaintiff, in a medical-malpractice suit to file an affidavit
stating that "there is a reasonable and meritorious cause" for litigation.  (735 ILCS 5/2-622).

3.      The Plaintiff must attach to the Complaint a physicians or health care practitioner
report in the same scope of license as the Defendant to support the affidavit's assertions.

4.      The report must show that the physician has reviewed the Plaintiff's medical
records and must justify the conclusion that "a reasonable and meritorious cause" exists.

5.      This requirement applies to medical malpractice litigation in federal court because
§5/2-622 is a substantive condition of liability.

6.      In Plaintiff's Second Amended Complaint (ECF #99), Plaintiff has failed to attach the requisite Affidavit and Health Professionals Report of a reviewing health care professional with filing of the Complaint.

7.      Defendant Dr. Myers is putting Plaintiff on notice of Plaintiff's failure to comply with 735 ILCS 5/2-622 and Plaintiff's failure to provide the required affidavit and health professional report.

8.      Plaintiff's Second Amended Complaint (ECF #99) must be dismissed with prejudice pursuant to 735 ILCS 5/2-622 for failure to attach the requisite Affidavit and Health Professional Report.

## IV.   *Heck v. Humphrey*

To the extent that Plaintiff's allegations require the invalidation of any discipline that resulted in the loss of good time credit, these allegations are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

## V.   **Prejudgment Interest**

1.      To the extent that Plaintiff is making a claim for prejudgment interest on any judgment entered in this case under 735 ILCS 5/2-1003(c), Defendant Dr. Myers states the following:

a.   That 735 ILCS 5/2-1303 (c) constitutes "special legislation" in violation of the Illinois Constitution, Art. IV, Sec. 13.

b.   That 735 ILCS 5/2-1303 (c) violates the constitutional guarantee of equal protection under the law contained in the Fourteenth Amendment to the United States Constitution and Art. I, Sec. 2 of the Illinois Constitution.

28

c. That 735 ILCS 5/2-1303 (c) violates the constitutional guarantee of due process of law contained in the Fifth and Fourteenth Amendments to the United States Constitution and Art. I, Sec. 2 of the Illinois Constitution.

d. That 735 ILCS 5/2-1303 (c) violates defendant's inviolate right of trial by jury as heretofore enjoyed guaranteed by Art. I, Sec. 13 of the Illinois Constitution.

**VI.    Failure to Follow Medical Advice and Exercise Reasonable Care**

1. The sole proximate cause of any alleged physical or mental injuries and damages alleged by Plaintiff was his failure to exercise reasonable care for his own well-being.

2. Plaintiff had a duty to follow reasonable medical advice, recommendations, treatment, or procedures, and attend appointments provided to him by medical and mental health staff and providers for the treatment and management of his claimed conditions.

3. Plaintiff failed to exercise reasonable care and follow reasonable medical advice, recommendations, or procedures provided to him by medical and mental health staff and providers and failed to attend appointments.

4. Plaintiff's actions were the sole proximate cause of any alleged injuries which are claimed in his Complaint and, therefore, this Defendant is not liable to the Plaintiff for the claims asserted herein.

**VII.    Comparative Fault/Contributory Negligence**

1. At all times at Pinckneyville Correctional Center, Plaintiff received constitutionally adequate and reasonable health care consistent with the applicable professional standard of care.

2.      Plaintiff s alleged injuries were a result, in whole or in part, of his own careless and negligent conduct and Defendant Dr. Myers is otherwise free from liability for said alleged injuries.

3.      At the relevant times alleged in the Complaint, Plaintiff was under a duty to exercise ordinary care for his own safety and to avoid acting, or failing to act, in a negligent and careless manner.

4.      Notwithstanding that duty, Plaintiff was negligent and careless in that Plaintiff failed to follow reasonable medical advice, recommendations, or procedures provided to him by medical and mental health staff and providers, and failed to attend appointments.

5.      The injuries and damages, if any, sustained by Plaintiff were caused by the direct and proximate cause/result of one or more of the foregoing acts or omissions of Plaintiff.

6.      There was in full force and effect at the time of the occurrence Section 2-1116 of the Illinois Code of Civil Procedure, which bars Plaintiff from recovering damages if his contributory fault is more than 50% of the proximate cause of the injury or damages from which recovery is sought.

7.      Plaintiff's negligence is more than 50% of the proximate cause of the injuries for which he now seeks recovery from Defendant Dr. Myers.  Therefore, Plaintiff claims should be dismissed and barred.

8.      Alternatively, if Plaintiff is determined to be in contributory fault for his failure to exercise ordinary care for his own safety, but not more than 50% of the proximate cause of the injury, negligence or damage for which recovery is sought, then any recovery from Defendant Dr. Myers shall be diminished in proportion to the amount of fault attributable to Plaintiff.

**VIII.   Failure to State Claim with Specificity**

Defendant Dr. Myers's personal involvement has not been established with sufficient specificity to state a claim upon which relief may be granted.

### IX.    No Personal Involvement

On occasions alleged in Plaintiff's Second Amended Complaint (ECF #99) in which Defendant Dr. Myers had no personal involvement, he cannot be liable to Plaintiff under any theory of recovery.

### X.    No Punitive Damages

To the extent that Plaintiff is seeking punitive damages for any alleged Illinois State Law medical negligence claims, those damages are barred by Illinois Statute.  735 ILCS 5/2-1115.

### XI.    Mootness

To the extent that Mr. Cornille is suing Defendant for declaratory relief or injunctive relief not intended to address ongoing violations, his claim is moot.

### XII.    Compensatory Damages Barred

To the extent that Mr. Cornille is suing Defendant for compensatory damages for mental or emotional injury suffered without a prior showing of physical injury, his claim is barred by the Prison Litigation Reform Act.

### XIII.    Injunctive Relief Barred

To the extent Plaintiff is suing Defendant for declaratory relief or injunctive relief not intended to address ongoing violations, his requests for such relief are barred by the Eleventh Amendment and the Prison Litigation Reform Act.

### XIV.    Official Capacity Claim Barred

To the extent that Plaintiff's claims are against Defendant in his official capacity the claims are barred by the Eleventh Amendment.

31

WHEREFORE, Defendant, PERCY MYERS, respectfully requests this Honorable Court to enter an Order granting judgment in favor of Defendant PERCY MYERS and against Plaintiff, dismissing his Second Amended Complaint (ECF #99) with prejudice and with costs, including attorney fees pursuant to 42 U.S.C. § 1988(b), and for such other relief as this Court deems appropriate and just.

Respectfully Submitted,
PERCY MYERS

Dated: May 28, 2026

By:   /s/ Victor F. Price
*Counsel for Defendant*
*Percy Myers*

Robert S. Tengesdal -- rtengesdal@cktrials.com
Victor F. Price -- vprice@cktrials.com
CONNOLLY KRAUSE LLC
150 N. Michigan Ave., Suite 1000
Chicago, Illinois 60601
(312) 253-6200

32

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on Thursday, May 28, 2026, I caused the foregoing document to be filed electronically with the Clerk of the Court through ECF and to be served upon all counsel of record by filing the same with the CM/ECF system.  All of the participants in the case will be served by the CM/EFC system.

By:   /s/ Victor F. Price     

CONNOLLY KRAUSE LLC
150 N. Michigan Ave., Suite 1000
Chicago, Illinois 60601